Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 1 January 2000, the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. On that date, the employer employed three or more employees.
4. The employer is uninsured.
5. Plaintiff's average week wage will be determined upon receipt of a Form 22.
 ***********
Based upon the competent evidence adduced at the hearing, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 31 years old. Defendant employed plaintiff as a cook. Defendant is a restaurant in Greensboro, North Carolina. Defendant employed plaintiff's wife as its night manager.
2. Plaintiff worked in his usual capacity for defendant on New Year's Eve and New Year's Day, 31 December 1999 and 1 January 2000. At approximately 5:30 a.m., plaintiff slipped in the kitchen and fell on his back. Two of his co-workers, James Wanganga and Loretta Hobbs, saw him on the floor immediately after he fell. Additionally, Ms. Hobbs was within a few feet of plaintiff at the time and heard him fall. Upon hearing this noise she turned and had an uninterrupted view of plaintiff on the floor. Mr. Wanganga walked into the kitchen a moment later and saw plaintiff on the floor. Plaintiff told Mr. Wanganga that he had just fallen.
3. While both Mr. Wanganga and Ms. Hobbs previously gave statements to the parties and the respective attorneys that varied from their testimony at the hearing, none of those prior remarks were made under oath, in the presence of the opposing parties, or were subject to cross-examination. The testimony of Mr. Wanganga and Ms. Hobbs was credible. To the extent that their prior statements were inconsistent with their statements at the hearing, the prior statements are not deemed credible.
4. A co-employee, Larry Jones, was working at defendant restaurant on the night of 31 December 1999. Mr. Jones was a temporary employee of defendant and was working that night as a cook due to the expected holiday crowd. Mr. Jones was stacking pots and pans in the kitchen area when he turned and saw plaintiff slip on a small amount of butter or margarine and fall, hitting his "tail and right elbow" on the tile floor of the kitchen. Mr. Jones took plaintiff from defendant's business to the emergency room at Wesley Long Hospital in Greensboro, North Carolina.
5. Plaintiff was admitted at 6:05 a.m. on 1 January 2000. Plaintiff reported that he had slipped and fallen while working, injuring his low back. Plaintiff stated that this incident had occurred at work just prior to coming to the hospital. He complained of severe pain. A physical examination by the emergency department physician revealed swelling and marks on the skin. The physician excused plaintiff from work pending evaluation at Occupational Health.
6. On 6 January 2000, plaintiff was seen at Moses Cone Occupational Health by Sebastian J. Ciacchella, M.D. Plaintiff gave Dr. Ciacchella a history of slipping and falling on his lower back and buttocks while at work on New Year's Day. Dr. Ciacchella ordered an MRI to be completed the next day. Dr. Ciacchella excused plaintiff from work for another day.
7. The Wesley Long Hospital MRI revealed a broad based left sided disc protrusion at L5-S1 potentially encroaching on the left S1 nerve root. Plaintiff returned to Dr. Ciacchella on 7 January 2000. Dr. Ciacchella administered an injection of Demerol and excused plaintiff from work until the next visit on 10 January 2000.
8. Plaintiff returned to Dr. Ciacchella on 10 January 2000. Dr. Ciacchella assessed plaintiff as having a herniated nucleus pulposus at L5-S1 with fairly significant symptomotalogy. Dr. Ciacchella referred plaintiff to a neurosurgeron and excused him from work until insurance authorized the referral.
9. Thereafter, plaintiff sought treatment from Donald Harris, M.D. On 24 January 2000, plaintiff brought Dr. Harris his MRI and reported a history of slipping and falling at Herbie's on 1 January 2000. Dr. Harris noted that plaintiff's symptoms were consistent with a ruptured disc. He believed that plaintiff was in "quite a bit of discomfort".
10. Dr. Harris stopped treating plaintiff in April 2000 because it appeared that plaintiff had obtained similar prescriptions from another doctor. Dr. Harris obtained records from CVS pharmacies in North Carolina, West Virginia and Virginia. The only record of prescriptions being filled other than from Dr. Harris were in November 1999, by Dr. Freeman Clark in West Virginia and in February 2000, by Dr. Cyrus Bakhit in Virginia. Dr. Clark is plaintiff's family physician in his hometown of Bland, Virginia. The November 1999 prescriptions were for a bad cough. On 4 January 2000, plaintiff had informally seen Dr. Clark who recommended that he see Dr. Bakhit who operated a pain clinic in Roanoke, Virginia. Plaintiff underwent an iliolumbar injection and received a prescription for medication.
11. Defendant maintained in its answer to plaintiff's First Set of Interrogatories, interrogatory 1, that plaintiff had worked as a roofer with Randy Sparks on 3, 4, and 5 January 2000. Mr. Sparks initially testified that this was so, but then wavered and testified that perhaps plaintiff did not work three days after all. Plaintiff was not in North Carolina on 4 January 2000, but was in Virginia where he was seen by Dr. Clark. Plaintiff testified that he worked for Mr. Sparks only one day. Additionally, plaintiff worked for defendant on 7 January 2000, despite being written out of work by Dr. Ciachella. Plaintiff worked both for Mr. Sparks and for defendant even though his physician had excused him from work.
12. Plaintiff first worked for defendant in early 1999 but quit in June to work in construction, his primary occupation. Prior to June 1999, defendant employed plaintiff on a part-time basis. Prior to June 1999, plaintiff had earned $3,704.00 from defendant. In November 1999, Ms. Sweeney approached plaintiff and asked him to return to work for defendant. As an encouragement to do so, Ms. Sweeney offered to pay plaintiff with cash from which no taxes would be withheld, as well as by paycheck. Ms. Sweeney assured plaintiff that his earnings from defendant would be as great as his earnings in construction. Defendant failed to provide a Form 22, however plaintiff's 1999 W-2 indicates that he earned $5,556.50 from defendant. This figure does not include $1,408.00 in cash payments made to plaintiff after he returned to work for defendant in November. Thus, plaintiff earned $3,260.50 from 15 November 1999 through 31 December 1999. On 28 December 1999, defendant raised plaintiff's rate of pay by $.50 per hour.
13. Defendant employed plaintiff for fewer than 52 weeks immediately preceding his injury. However, calculating his average weekly wage by dividing his total earnings by the number of weeks and parts thereof during which he earned wages will not produce a result that is fair and just to both parties because defendant employed plaintiff for two distinct periods, during the first of which he worked only part-time. Plaintiff's average weekly wage should be calculated based only upon his earnings while employed by defendant full-time. From 15 November 1999 through 1 January 2000, a period of 6.8571 weeks, plaintiff earned $3,260.50. Thus, plaintiff's average weekly wage was $475.49.
14. As a result of the incident on 1 January 2000, plaintiff was rendered incapable of earning wages from defendant or any other employer beginning from 1 January 2000 and continuing through the date of the hearing. Defendant continued paying plaintiff his regular salary through 11 January 2000.
15. The incident on 1 January 2000 was not caused by plaintiff's intoxication.
16. Defendant did not defend plaintiff's claim without reasonable ground.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 1 January 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $317.00 per week beginning 11 January 2000 and continuing until he returns to work or until order of the Industrial Commission allowing cessation of temporary total disability compensation. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-32.1.
3. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his low back injury on 1 January 2000. N.C. Gen. Stat. § 97-25.1.
4. Plaintiff is not entitled to an award of attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $317.00 per week beginning 11 January 2000 and continuing until he returns to work or until order of the Industrial Commission allowing cessation of temporary total disability compensation. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3.
2. Defendant shall pay all medical expenses incurred or to be incurredby plaintiff as a result of his low back injury on 1 January 2000.
3. A reasonable attorney's fee of 25% percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: 25% of the lump sum due plaintiff in paragraph 1 shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive as an attorney's fee every fourth compensation payment due plaintiff.
4. Defendant shall pay the costs, including $300.00 to Dr. Harris as an expert witness fee, and $147.50 for the transcript of the deposition of Larry Wayne Jones.
This the ___ day of October, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER